IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION


**JD WIND 1, LLC et al.,**
    **Plaintiff,**

-vs-                           **Case No.  A-09-CA-917-SS**

**BARRY SMITHERMAN et al.,**
    **Defendant.**

_____


**O R D E R**

   BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiffs JD Wind 1, LLC, JD Wind 2, LLC, JD Wind 3, LLC, JD Wind 4, LLC, JD Wind 5, LLC, and JD Wind 6, LLC (collectively "JD Wind")'s Motion for Summary Judgment [#10], Appendix thereto [#11], Defendants Barry Smitherman, Donna L. Nelson, and Kenneth W. Anderson, Jr. (collectively the "Public Utility Commission of Texas" or "PUC")'s Response [#28], Intervenor Defendant Southwestern Public Service Company ("Southwestern")'s Response [#25], Intervenor Defendant Occidental Permian, Ltd. ("Occidental")'s Response [#26], JD Wind's Reply [#33], Occidental's Motion to Strike Plaintiff's Facts in Support of Summary Judgment [#36], JD Wind's Response [#34], Occidental's Reply [#39], PUC's Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim [#12], JD Wind's Response [#24], PUC's Reply [#35], Occidental's Motion to Dismiss [#19], JD Wind's Response [#24], Occidental's Reply [#32], All Defendants' Motion to Stay Case [#15], JD Wind's Response [#23], and Defendants' Reply [#31]. In addition, the Court has considered the assorted advisories submitted by both JD Wind and

Occidental [# 37, 38, 40, 43, 44]. Having considered the motions, responses, replies, advisories, applicable law, and the case file as a whole, the Court now enters the following opinion and orders.

## Statutory Background

### I. Public Utilities Regulatory Policies Act

This case concerns PUC's interpretation and implementation of a federal statutory and regulatory scheme governing the purchase of energy between public utilities and certain energy production facilities. Congress enacted the Public Utilities Regulatory Policies Act of 1978 ("PURPA")[1] to reduce the dependence of electric utilities on foreign oil and natural gas, in part by encouraging development of alternative energy sources. *Power Res. Grp. v. Pub. Util. Comm'n of Tex.*, 422 F.3d 231, 233 (5th Cir. 2005). PURPA sought to promote cogeneration and small power production facilities, including renewable energy providers such as wind and solar generators. 16 U.S.C. §796(17)(A) (defining "small power production facility"). These types of facilities are known as "qualifying facilities" or "QFs." 18 C.F.R. § 292.101(b)(1) (defining "qualifying facility"). Congress also required the rates paid for this electricity "be just and reasonable to the electric consumers of the electric utility and in the public interest." 16 U.S.C. § 824a-3(b)(1). Thus, rates paid by electric utilities to QFs may not exceed the incremental cost of the utility's alternatives to the QF power. 16 U.S.C. § 824a-3(d) (defining "incremental cost of alternative electric energy" as "the cost to the electric utility of the electric energy which, but for the purchase from such [QF], such utility would generate or purchase from another source." This is also known as "avoided cost.").

---

[1] Pub. L. No. 95-617, 92 Stat. 3117 (1978) as amended, codified in relevant part at 16 U.S.C. §§ 796 (17)-(18) and 824a-3.

## II.     Federal Energy Regulatory Commission Regulations

PURPA directs the Federal Energy Regulatory Commission ("FERC") to promulgate regulations to promote energy purchase from QFs. 16 U.S.C. § 824a-3(a). State regulatory agencies, such as PUC, are then directed to adopt rules which comply with FERC's regulations and implement PURPA. 16 U.S.C. § 824a-3(f). The FERC regulations require each electric utility to "purchase, in accordance with § 292.304, . . . any energy and capacity which is made available from a qualifying facility." 18 C.F.R. § 292.303(a). FERC sets the rate for these purchases at the utility's full avoided cost unless a state regulatory agency determines that a lower rate is in the public interest and is sufficient to encourage the development of QFs. 18 C.F.R. § 292.304(b).

Section 292.304(d) provides QFs with two ways to sell power to utilities, both without a contract. "Each [QF] shall have the option" to sell power to the utility on an "as available" basis, or pursuant to a "legally enforceable obligation." 18 C.F.R. § 292.304(d). A noncontractual "legally enforceable obligation" obligates both the QF and the utility, like a bilateral contract. If the QF provides energy "as available," the rate is based on the utility's avoided costs calculated at the time of delivery. 18 C.F.R. § 292.304(d)(1). When a QF instead provides energy or capacity pursuant to a "legally enforceable obligation," the rate is based on the utility's avoided costs calculated (at the QF's election) either (1) at the time of delivery, or (2) at the time the obligation is incurred. 18 C.F.R. § 292.304(d)(2).

## III.    PUC's Rules

PURPA directs state regulatory authorities to implement FERC's PURPA regulations. 16 U.S.C. § 824a-3(f)(1). In adopting its regulations, FERC indicated state regulatory authorities have "great latitude in determining the manner of implementation of the Commission's rules, provided

that the manner chosen is reasonably designed to implement the requirements" of the FERC regulations. Final Rule, 45 Fed. Reg. 12230 (Feb. 25, 1980).[2] PUC has accordingly enacted rules governing utility purchases from QFs. *See* 16 Tex. Admin. Code § 25.242.

PUC's rules, relevant to this case, distinguish between firm and non-firm power. Section 25.242(c)(5) defines "firm power" as "[f]rom a qualifying facility, power or power-producing capacity that is available pursuant to a legally enforceable obligation for scheduled availability over a specified term." *Id.* Section 25.242(c)(9) defines "non-firm power from a qualifying facility" as "[p]ower provided under an arrangement that does not guarantee scheduled availability, but instead provides for delivery as available." *Id.* PUC also has jurisdiction to render administrative decisions to resolve complaints regarding sales of power between QFs and utilities. *See* Tex. Util. Code Ann. §§ 11.001-66.017 (Vernon 1998 & Supp. 2008); 16 Tex. Admin. Code § 25.242(m).

IV.     **Review of State Commission Decisions under PURPA**

PURPA provides for two types of review of state utility regulatory authorities' actions: implementation and "as applied" challenges. *See Power Res. Grp.*, 422 F.3d at 234-35. "An

---

[2]FERC has expanded on this sentiment in other orders and the Fifth Circuit has emphasized the latitude given to states. *See Power Res. Grp.*, 422 F.3d at 239 (regarding when a legally enforceable obligation is created); *West Penn Power Co.*, 71 FERC 61,153 at 61,495 (1995) ("It is up to the States, not this Commission, to determine the specific parameters of individual QF power purchase agreements, including the date at which a legally enforceable obligation is incurred under State law. Similarly, whether the particular facts applicable to an individual QF necessitate modifications of other terms and conditions of the QF's contract with the purchasing utility is a matter for the States to determine. This Commission does not intend to adjudicate the specific provisions of individual QF contracts."). This is slightly different than the ultimate issue in this case: whether states can determine if a particular QF may establish a legally enforceable obligation at all, not just when and how. These FERC decisions do not indicate whether a state can prohibit an individual QF from forming a legally enforceable obligation. The Court need not address this issue at this point, however, because until the PUC order is finalized it is unclear whether this will, in fact, be the question to be decided.

implementation claim involves a contention that the state agency . . . has failed to implement a lawful implementation plan under § 824a-3(f) of PURPA, whereas an "as-applied" claim involves a contention that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner." *Power Res. Group*, 422 F.3d at 235 (internal quotations omitted). Federal district courts only have jurisdiction over implementation claims in which the party has first petitioned FERC to bring an enforcement action and FERC failed to do so. *Id.* (citing *Indus. Cogenerators v. FERC*, 47 F.3d 1231, 1234 (D.C.Cir. 1995)); *see also* 16 U.S.C. § 824a-3(h). Federal courts may not hear "as applied" claims, because jurisdiction over such claims is reserved to the state courts. *Id.*; *see also* 16 U.S.C. § 824a-3(g).

## Factual and Procedural Background

In this case, JD Wind, a QF, brought a complaint against Southwestern contending it had established a legally enforceable obligation under PURPA by sending Southwestern a letter notifying it that its energy was available or would be available for purchase within 90 days, as required by 16 Tex. Admin. Code § 25.242(f)(1)(B). Pl. Compl. [#1], Attach. 4 (hereinafter "PUC Order") at 1. JD Wind complained Southwestern had refused to recognize the legally enforceable obligation and the election JD Wind had made pursuant to 18 C.F.R. § 292.304(d)(2) demanding a term of 20 years and pricing at avoided cost calculated at the time the obligation was incurred. *Id.* at ¶ 7-8. Southwestern disputed JD Wind's requested pricing and term demands.[3] *Id.* at ¶ 10. Southwestern argued the energy JD Wind was providing was non-firm energy under § 25.242(c)(9), and thus JD

---

[3]Southwestern acknowledged it had an obligation to purchase 100% of JD Wind's energy, pursuant to PURPA and the PUC rules, but disputed whether the rate in this instance could be set by a legally enforceable obligation. *Id.* at ¶ 11.

Wind could not have created a legally enforceable obligation and was only entitled to payment at the "standard tariff" as set by PUC.  Def. Mot. [#12] at 9.

PUC referred the complaint to the Texas State Office of Administrative Hearings which issued a Proposal for Decision ("PFD").  JD Wind argued it was entitled to a legally enforceable obligation because it was, in fact, selling firm power to Southwestern.  PFD at 14-15.  JD Wind argued the power was firm because JD Wind was committing to provide all of its power, when available, to Southwestern.  *See id.* ("The JD Wind Companies argued that the firm power condition is satisfied (thereby allowing a QF to rely on a legally enforceable obligation) when a QF exercises its discretion to commit all of its power to the utility.").  In response, Defendants argued a QF cannot render its power firm simply by committing to sell all of its output to a particular utility.  *Id.* at 15.  Rather, they contended, based on the definitions of "firm" and "non-firm" power, a QF must be able to provide scheduled availability over a specified term in order to provide firm power, and in order to enter into a legally enforceable obligation.  *Id.*

The PFD found JD Wind's energy was non-firm.  *Id.* at 38.  Thus, because it was not selling firm power, JD Wind had not established a legally enforceable obligation and was not entitled to the pricing and terms it demanded.  *Id.*  PUC agreed with the PFD and denied JD Wind's complaint.  PUC Order at 1.  PUC did, however, alter one portion of the PFD and made several minor changes.  *Id.*

In June 2009, JD Wind filed suit under the Texas Administrative Procedure Act in Travis County district court, seeking judicial review of the PUC Order.  In September 2009, JD Wind filed a petition for enforcement and declaratory order with FERC, complaining the PUC Order failed to implement PURPA.  In November 2009, FERC stated it would not initiate an enforcement action

against PUC, but issued a declaratory order stating the PUC Order is inconsistent with PURPA and FERC's PURPA rules. This declaratory order is simply a statement of the position FERC may take in litigation, and is not binding upon PUC. In December 2009, JD Wind filed this lawsuit. In January 2010, JD Wind filed a motion to remand its Administrative Procedure Act suit in state court back to PUC to add the FERC declaratory order to the administrative record and to allow PUC to reconsider the denial of JD Wind's complaint against Southwestern in light of the FERC declaratory order. In the alternative, JD Wind asked that its state-court appeal be abated, contending the resolution of this case may render the state court appeal moot. PUC filed a response opposing both the remand and abatement, noting the state court appeal of the PUC Order must be decided, thus finalizing the PUC Order before this Court may consider JD Wind's implementation claim, if it has one, based upon what is still a non-final PUC Order.

Defendants' now move to dismiss arguing the Court lacks jurisdiction because this is not an implementation claim but an "as applied" challenge. Defendants also request a stay so that the PUC order being challenged may be finalized in the state court in order to avoid parallel, duplicative proceedings.

## Analysis

I. **Motion to Dismiss**

    A. **Legal Standard for 12(b)(1) and 12(b)(6) Motion to Dismiss**

A party seeking to invoke the jurisdiction of a federal court must prove jurisdiction is proper. Federal district courts are courts of limited jurisdiction, and they may only exercise such jurisdiction as is expressly conferred by federal statute. *See Le Mieux Bros. v. Tremont Lumber Co.*, 140 F.2d 387, 389 (5th Cir. 1944). Federal Rule of Civil Procedure 12(b)(1) provides the vehicle through

which subject matter jurisdiction may be challenged. The burden of establishing subject matter jurisdiction rests with the party seeking to invoke it. *See Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

In evaluating a challenge to subject matter jurisdiction the Court is free to weigh the evidence and resolve factual disputes so it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004). In conducting its inquiry the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Id.* The Court must take the allegations of the complaint as true and draw all inferences in Plaintiff's favor. *Saraw Partnership v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). Dismissal is warranted if Plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In deciding whether to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "the Court must take the factual allegations as true, resolving any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). However, the plaintiff "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).

Even under the liberal pleading standard set forth by Rule 12(b)(6), the Court may not assume the plaintiff can prove facts he has not alleged. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 443 (5th Cir. 1986). Moreover, dismissal is appropriate where the complaint is devoid of facts to establish any one of the required elements of the claim asserted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

### B. Pleading an Implementation Challenge

As discussed above, this Court only has jurisdiction over PURPA cases which challenge the implementation of the statute or the FERC regulations by the state. *See Power Res. Grp.*, 422 F.3d at 235; 16 U.S.C. § 824a-3(g). Defendants argue this Court has no jurisdiction over JD Wind's challenge because, although it is characterized as an implementation claim, it is actually an "as applied" claim based on the language of the order JD Wind is challenging. Federal court jurisdiction over a challenge to a state's PURPA implementation requires two conditions: (1) the party bringing the claim must first petition FERC to bring and enforcement action, *see* 16 U.S.C. § 824a-3(h), and (2) if FERC declines to bring such an action, the party may file a complaint which "challenges the state regulations as an illegal implementation of PURPA and the FERC regulations." *Power Res. Grp., Inc. v. Klein*, 2004 U.S. Dist. LEXIS 28820, at *16 (W.D. Tex. Feb 18, 2004). If, however, the complaint presents a claim "that the state agency's . . . implementation plan is unlawful, as it applies to or affects an individual petitioner," a federal court does not have

jurisdiction because jurisdiction over such claims is reserved to the state courts. *Power Res. Group*, 422 F.3d at 235; *see also* 16 U.S.C. § 824a-3(g).

There is no dispute JD Wind has met the first condition. It petitioned FERC and FERC declined to initiate an enforcement action, although FERC did issue a declaratory order. Pl. Resp. [#24] at 11. Defendants instead argue JD Wind's complaint does not meet the second condition for federal court jurisdiction because it does not allege illegal implementation of PURPA and the FERC regulations. Def. Mot. [#12] at 17-19. Defendants argue JD Wind's complaint only asserts an "as applied" claim because the PUC Order JD Wind challenges only applied to JD Wind. *Id.* at 18-19 ("When the state commission's decision is fact-specific to a particular QF—as here—a challenge to that decision is as applied."). Defendants argue JD Wind mischaracterizes the PUC Order in its complaint in order to fabricate an implementation claim to justify this Court's jurisdiction.

The PUC Order in question adopted the findings proposed by the State Office of Administrative Hearings. However, Defendants argue, it deleted one finding and thus "expressly rejected a categorical exclusion of wind and other intermittent generators from establishing legally enforceable obligations." *Id.* at 22. The PUC Order stated: "The ALJ found that wind-generated power is not readily available. The Commission disagrees with this broad statement encompassing all wind-generated power." PUC Order at 1. The PUC Order further explained "disparate wind patterns in the diverse geographic regions of the state can result in significantly different characteristics for wind-generated power. Further, combining wind with energy storage techniques or other energy sources, like solar energy, can also result in significant differences." *Id.* at 1-2. Defendants argument is based in large part on these comments. In short, Defendants argue the PUC Order only applied to JD Wind and did not make any sweeping ruling regarding whether wind power

was inherently non-firm or whether a QF powered solely by wind could ever create a legally enforceable obligation. *See* 16 Tex. Admin. Code § 25.242. The ALJ did find, and PUC did not dispute, that under Texas law, a legally enforceable obligation requires showing the QF is capable of providing firm power. PFD at 32-38. Since JD Wind was unable to show it could provide firm power, due to the intermittent availability of wind, PUC held it cannot create a legally enforceable obligation. *Id.* at 38.

The cases cited by Defendants, including the Fifth Circuit's decision in *Power Resource Group*, deal with allowing "states discretion in determining when a [legally enforceable obligation] is created," including issues like whether an unbuilt QF can create a legally enforceable obligation. *Power Res. Grp.*, 422 F.3d at 239; *see e.g. Mid-South Cogeneration, Inc. v. Tenn. Valley Auth.*, 926 F. Supp. 1327 (E.D. Tenn. 1996). This case presents a different issue: whether a certain class of QF, here wind energy producers of non-firm power, can be disqualified entirely from securing a legally enforceable obligation. The FERC regulation clearly states "*each* qualifying facility *shall* have the option either:" to provide energy as available, or to provide energy pursuant to a legally enforceable obligation. 18 C.F.R. § 292.304(d) (emphasis added). While the case law certainly indicates states have wide discretion in determining when and how a legally enforceable obligation may be created, there is no indication states may pass regulations limiting certain types of QFs to only providing energy as available. This is the implementation claim JD Wind has successfully pled. JD Wind does not dispute that PUC may regulate the procedures for obtaining a legally enforceable obligation,

however it does dispute whether PUC may regulate which types of QF qualify to obtain a legally enforceable obligation based solely on the source of the power it produces.[4]

JD Wind's complaint sufficiently addresses these issues and successfully pleads an implementation challenge. Thus the motions to dismiss are denied. Certainly, the complaint interprets the PUC Order and the ALJ's proposal for decision broadly. However, JD Wind's complaint makes the following simple, logical implementation claim: JD Wind is undeniably a QF. The FERC regulation contains an express requirement that "*each [QF] shall have the option*" to sell energy on an "as available" basis or pursuant to a legally enforceable obligation with specified terms. 18 C.F.R. § 292.304(d). Thus, since JD Wind was not given the option to sell pursuant to a legally enforceable obligation, the PUC Order failed to legally implement the FERC regulations, and PURPA. Further, since the reason for denying JD Wind the ability to create a legally enforceable obligation was its reliance solely on intermittent wind power, the order is not limited in its effect to only JD Wind, but instead is a failure to lawfully implement PURPA and the FERC regulations. *See e.g.* Pl. Compl. [#1] at ¶¶ 1, 24, 96-97, 124-25.

JD Wind pled that the PUC Order adversely effected "numerous intermittent renewable resource QFs, including wind and solar powered generating facilities." *Id.* at ¶ 24. The PUC Order did not agree with, and consequently deleted, the statement: "wind-generated power is not readily available." However, the intermittent nature of wind generated power was the reason PUC found JD Wind's power was non-firm and thus did not qualify for a legally enforceable obligation. PUC

---

[4]Defendants' primary argument is that the PUC specifically limited its order to JD Wind, and deleted any holding regarding "all wind facilities." While this is facially true, it strains reason to believe that the order would not be applied identically to any other wind producer, and perhaps any other QF, which could not provide firm power under the PUC regulation.

also implicitly broadened its findings when it explained the other conditions which could allow a wind energy facility to succeed in providing firm power. By suggesting the case might be analyzed differently if there was not a stand-alone wind generator, but instead one combined with either solar power or energy storage, PUC impliedly found wind energy alone cannot be the basis for a legally enforceable obligation. *See* PUC Order at 1-2. As such, JD Wind has presented an implementation claim based on the PUC Order and thus properly invoked this Court's jurisdiction under 16 U.S.C. § 824a-3(h).

## II.     Motion to Stay

JD Wind has successfully pled an implementation challenge based on the PUC Order. However JD Wind is also simultaneously pursuing a modification of the same PUC Order in state court. Thus, the PUC Order is not yet final and therefore the Court must stay the case until the order on which the challenge is based is final. *See* Def. Mot. [#15] at 1. "The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. North Amer. Co.*, 299 U.S. 248, 254 (1936).

JD Wind simply argues that since the Court has exclusive jurisdiction over implementation claims it cannot abstain. Whether the Court can abstain when it has exclusive jurisdiction is an interesting question, but not relevant to the Court's decision on staying the case. In short, the Court is only delaying its exercise of exclusive jurisdiction in order to insure the basis for that jurisdiction remains once the agency order is final. *See Adrian Energy Assoc. v. Mich. Pub. Serv. Comm'n*, 481 F.3d 414, 424-25 (6th Cir. 2007) (The Sixth Circuit reversed the district court's dismissal of a similar implementation case pending state appeal of a PUC order and instructed the district court to "stay[] the plaintiffs' claims until the state court proceedings concluded" because this strikes an

"appropriate balance" between the need for final state orders and the protection of federal rights.) It is also possible the final PUC order will resolve the case to JD Wind's satisfaction and JD Wind will have neither an "as applied" nor implementation challenge.[5] Thus, the Court will stay this case pending the issuance of the final PUC order. Until this Court has a final decision from PUC to analyze under PURPA, any decision by this Court would be a premature decision based on a non-final state agency order.

## Conclusion

In accordance with the foregoing,

> IT IS ORDERED that Defendants' Motions to Dismiss [#12, 19] are DENIED.

> IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [#10], and Defendants' Motion to Strike [#36] are DISMISSED WITHOUT PREJUDICE to refiling upon the issuance of the final PUC order and subsequent lifting of the stay.

> IT IS FINALLY ORDERED that Defendants' Motion to Stay Case [#15] is GRANTED. This case is stayed until such time as PUC's order becomes final. The parties shall submit a status report in the form of a letter every ninety (90) days advising as to the status of the case with the first report being due on December 14, 2010.

> SIGNED this the 14th day of September 2010.

_____
SAM SPARKS
UNITED STATES DISTRICT JUDGE

---

[5] It seems unlikely, but miracles do happen.